IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHARLES E. WILSON, SR., and
VERDELL M. WILSON,

    Plaintiffs,

v.

MCCALLA RAYMER, LLC,

    Defendants.

CIVIL ACTION NO.
1:12-cv-2663-CC-RGV

**MAGISTRATE JUDGE'S ORDER AND**
**<u>FINAL REPORT AND RECOMMENDATION</u>**

Pending before the Court is a motion filed by defendant McCalla Raymer, LLC ("McCalla") to dismiss plaintiffs Charles E. Wilson, Sr., and Verdell M. Wilson's ("plaintiffs") amended complaint. [Doc. 5].[1] Plaintiffs have filed a response in opposition to the motion, [Doc. 8], to which McCalla has replied, [Doc. 9]. For the following reasons, it is **RECOMMENDED** that McCalla's motion to dismiss, [Doc. 5], be **GRANTED**.[2]

---

[1] The document and page numbers listed in citations to the record refer to the documents and pages listed in the Adobe file reader linked to this Court's electronic filing database, CM/ECF.

[2] McCalla has also filed a motion to stay discovery and pretrial deadlines pending the outcome of its potentially dispositive motion to dismiss. [Doc. 6]. For good cause shown, McCalla's motion to stay is **GRANTED**, and all the applicable deadlines are stayed pending the District Court's review of this Report and

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the foreclosure sale of certain real property located at 739 Joseph E. Lowery Boulevard, SW, Atlanta, Georgia, 30310 (the "property"). See generally [Docs. 1, 3].[3] On December 19, 2007, plaintiffs obtained a loan from Bank of America, N.A. ("BANA") in the principal amount of $283,500.00, plus interest (the "loan" or the "note") and, as security for the loan, executed a security deed conveying the property to BANA, which was recorded on January 23, 2008, at Deed Book 46255, Page 137 in the Fulton County, Georgia, real property records (the "security deed"). [Doc. 5-2].[4] The note and security deed both listed BANA as the

---

Recommendation on McCalla's motion to dismiss.

[3] Unless otherwise indicated, the facts are taken from plaintiffs' complaint and the parties' pleadings, and do not constitute findings of fact by the Court.

[4] Generally, the Court "may not consider matters outside the pleadings without converting the motion to a motion for summary judgment." Redding v. Tuggle, No. 1:05-cv-2899-WSD, 2006 WL 2166726, at *5 (N.D. Ga. July 31, 2006), adopted at *1; see also Omega Patents, LLC v. Lear Corp., No. 6:07-cv-1422-Orl-31DAB, 2008 WL 821886, at *1 (M.D. Fla. Mar. 20, 2008). However, the Court may consider these exhibits without converting McCalla's motion into a motion for summary judgment since the documents are "central to [plaintiffs'] claim and the authenticity of the document[s] [are] not challenged." Adamson v. Poorter, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (per curiam) (unpublished)(citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364,1369 (11th Cir. 1997) (per curiam)); see also Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332 n.6 (11th Cir. 2001); Mullinax v. United Mktg. Grp., LLC, Civil Action No. 1:10–CV–03585–JEC, 2011 WL 4085933, at *3 n.4 (N.D. Ga. Sept. 13, 2011). Furthermore, the documents are public documents, and "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion

2

secured creditor. [Doc. 3 at 3 ¶ 8]. BANA subsequently assigned the security deed to BAC Home Loans Servicing, LP ("BAC"),[5] and this assignment was recorded on July 1, 2011, at Deed Book 50178, Page 274, of the Fulton County, Georgia, real property records. [Doc. 5-3]. The same day, July 1, 2011, BAC merged with and into BANA. See [Doc. 5-1 at 3 n.4].

At some unspecified point in time, plaintiffs became delinquent on their monthly payments and were declared to be in default. [Doc. 3 at 4 ¶ 13]. On April 28, 2011, plaintiffs received a letter from McCalla, who had been hired as BANA's foreclosure attorney, stating that plaintiffs owed the entire loan amount, and that the debt was owed to BANA, who was "authorized to receive payment on [their] loan, but who may not be the recorded holder of the security deed." [Id. at 4 ¶ 14, 6 ¶ 20]. This letter clearly stated that it was an attempt to collect a debt, and that any information obtained would be used for that purpose. [Id. at 4 ¶ 15].

---

into a Rule 56 motion." Halmos v. Bomardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010) (per curiam) (unpublished) (citations omitted); see also Zivanic v. Wash. Mut. Bank, F.A., No. 10-737 SC, 2010 WL 2354199, at *2 n.2 (N.D. Cal. June 9, 2010). Accordingly, the Court will consider the exhibits at this stage without converting the motion to dismiss to a motion for summary judgment. See Metal Morphosis, Inc. v. Acorn Media Publ'g, Inc., 639 F. Supp. 2d 1367, 1374 (N.D. Ga. 2009) (citing Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)).

[5] The assignment had an effective date of March 26, 2011. [Doc. 5-3].

Plaintiffs subsequently received multiple letters from McCalla entitled "Notice of Foreclosure Sale." [Id. at 5 ¶ 16]. Particularly relevant for this case is the letter dated August 2, 2011, which stated in relevant part:

> The entity that has full authority to negotiate, amend or modify all terms of the mortgage with the debtor is:
>
> Bank of America, N.A.,
> 475 Crosspoint Parkway
> Getzville, NY 14068.
> 800-285-6000
>
> Please understand that the secured creditor is not required by law to negotiate, amend or modify the terms of the mortgage instrument.

[Id. at 5 ¶ 17]; see also [Doc. 5-4]. However, plaintiffs allege that this information was false since "[p]rior to the August 2, 2011 letter, both [BANA] and Fannie Mae had confirmed to [p]laintiffs that Fannie Mae (*not* [BANA]) was the secured creditor of the Note numerous times in writing over the course of several months between the loan closing and [p]laintiffs' default."[6] [Id. at 6 ¶ 19]. On September 6, 2011, pursuant to the power of sale contained in the security deed, BANA foreclosed on the property through its agent, McCalla. [Id. at 6 ¶ 21].

---

[6] Indeed, plaintiffs specifically allege that "[s]ubsequent to the loan transaction and to the recording of the [n]ote and [s]ecurity [d]eed, [BANA] sold and assigned all right, title and interest of[sic] [p]laintiffs' [n]ote to The Federal National Mortgage Association ('Fannie Mae')." [Doc. 3 at 3 ¶ 11]. However, plaintiffs also assert that BANA "did not record the sale, transfer and assignment of [p]laintiffs' [n]ote with the Clerk of the Superior Court of Fulton County, Georgia. [Id. at 4 ¶ 12].

On July 1, 2011, plaintiffs filed a "Verified Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction" against BANA and BAC in the Superior Court of Fulton County, Georgia, which defendants removed to this Court of October 18, 2011.[7] See generally Wilson v. Bank of Am., N.A., Civil Action No. 1:11-cv-03539-TWT, at [Doc. 1] (N.D. Ga. Oct. 18, 2011). In that action, plaintiffs sought an order from the Court to enjoin the foreclosure sale of the property, raising allegations of wrongful foreclosure and violations of state law. See [id.]. Defendants moved to dismiss the action as moot since the foreclosure sale plaintiffs sought to prevent had already occurred, see id., at [Doc. 6] (N.D. Ga. Oct. 20, 2011), and plaintiffs did not oppose the motion, acknowledging that the foreclosure sale had already taken place, see id., at [Doc. 9] (N.D. Ga. Oct. 31, 2011). Accordingly, the Court dismissed the action on December 22, 2011. See id. at [Doc. 10] (N.D. Ga. Dec. 22, 2011).

---

[7] Plaintiffs also filed a "Verified Complaint" against BAC in the Superior Court of Fulton County, Georgia, on May 4, 2010, which was subsequently removed to this Court and then voluntarily dismissed by plaintiffs. See [Doc. 5-1 at 4-5]; see also Wilson v. BAC Home Loans Servicing, LP, Civil Action No. 1:10-cv-01974-RWS, at [Doc. 2] (N.D. Ga. July 14, 2010). As the events relevant to the present action had not yet occurred when this suit was filed, this earlier action was apparently based on actions BAC had taken with respect to an earlier default on plaintiffs' loan, occurring in April of 2009. See [id. at 3]. Accordingly, this action will not be discussed further herein.

5

On January 23, 2012, plaintiffs filed a complaint against BANA and BAC in the Superior Court of Fulton County, Georgia, which defendants removed to this Court on March 1, 2012. See generally Wilson v. Bank of Am., N.A., Civil Action No. 1:12-cv-00708-TWT, at [Doc. 1] (N.D. Ga. Mar. 1, 2012). In that action, plaintiffs alleged violations of Georgia foreclosure law and sought to set aside the September 6, 2011, foreclosure sale of the property. See generally id., at [Doc. 1-1] (N.D. Ga. Mar. 1, 2012). The action was voluntarily dismissed by plaintiffs on March 5, 2012. See id., at [Doc. 5] (N.D. Ga. Mar. 5, 2012).

On August 1, 2012, plaintiffs filed the instant action against McCalla in this Court, see [Doc. 1], and on August 6, 2012, plaintiffs amended their complaint, [Doc. 3]. Plaintiffs' amended complaint asserts claims against McCalla for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., allegedly arising out of communications McCalla sent to plaintiffs leading up to the September 6, 2011, foreclosure sale of the property.[8] See generally [id.]. Specifically, plaintiffs assert that McCalla violated § 1692g(a)(2) because the letter sent on August 2, 2011, falsely identified BANA as the "secured creditor of the Note," and that the

---

[8] The amended complaint also alleged violations of the Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390 et seq.; however, plaintiffs concede that any such claims are due to be dismissed. See [Doc. 8 at 7]. Accordingly, it is **RECOMMENDED** that McCalla's motion to dismiss, [Doc. 6], be **GRANTED** with respect to plaintiffs' GFBPA claims.

6

letter was a false and misleading communication in violation of § 1692e, which also amounts to an unfair and/or unconscionable means to attempt to collect a debt in violation of § 1692f. See [id. at 7 ¶ 26, 8 ¶¶ 27-29]. Plaintiffs contend that these actions resulted in "actual damages in the form of loss of their home; severe tax consequences in the hundreds of thousands of dollars; emotional distress; embarrassment; and humiliation" and that they are therefore entitled to compensation under 15 U.S.C. § 1692k. [Id. at 8-9 ¶¶ 30-32]. McCalla moves to dismiss plaintiffs' amended complaint with prejudice for failure to state a claim. [Doc. 5].

## II. STANDARD ON MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court must accept plaintiffs' allegations as true and construe the complaint in plaintiffs' favor. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).[9] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

---

[9] "However, the court need not 'accept as true a legal conclusion couched as a factual allegation.'" Smith v. Delta Air Lines, Inc., 422 F. Supp. 2d 1310, 1324 (N.D. Ga. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Additionally, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document . . . reveals facts

7

need detailed factual allegations, [] plaintiff[s'] obligation to provide the grounds of [their] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (fourth alteration in original) (citations and internal marks omitted). To survive a motion to dismiss, a complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Furthermore, "Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Broner v. Wash. Mut. Bank, FA, 258 F. App'x 254, 256 (11th Cir. 2007) (per curiam) (unpublished) (quoting Fed. R. Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555 (citation omitted), as the complaint must contain "enough facts to state a claim to relief that is plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

which foreclose recovery as a matter of law, dismissal is appropriate.'" Id. (alterations in original) (quoting Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974)) . Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

8

draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The Supreme Court in Iqbal held:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."

556 U.S. at 678-79 (last alteration in original) (citations and internal marks omitted).

### III. DISCUSSION

Plaintiffs assert that the August 2, 2011, communication from McCalla violated 15 U.S.C. §§ 1692e, 1692f and 1692g(2). See [Doc. 3]. The purpose of the FDCPA is "'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1270 (11th Cir. 2011) (quoting 15 U.S.C. § 1692(e)). "In order to prevail on a FDCPA claim, a [p]laintiff must prove that: (1) [he] has been the object of

9

collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Diaz v. Fla. Default Law Grp., P.L., No. 3:09–cv–524–J–32MCR, 2011 WL 2456049, at *2 (M.D. Fla. Jan. 3, 2011) (alteration, citations, and internal marks omitted).

### A. McCalla as a Debt Collector

The FDCPA defines a "debt collector" as:

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Plaintiffs specifically allege that McCalla is a debt collector, see [Doc. 3 at 6-7 ¶ 23], and the allegations of the amended complaint, considered in the light most favorable to plaintiffs, support finding that McCalla was in the business of attempting to collect debts owed to another, in this case, BANA, see generally [Doc. 3]. Accordingly, the Court finds that plaintiffs have sufficiently alleged that McCalla is a debt collector for purposes of their FDCPA claim.

### B. Debt Collection Activity

"Although the FDCPA contains no clear definition of what constitutes 'debt collection activity,' '[t]o collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings.'" Diaz, 2011 WL 2456049,

10

at *2 (alteration in original) (citation omitted) (quoting Heintz v. Jenkins, 514 U.S. 291, 294 (1995)). "The Eleventh Circuit has held, however, that 'enforcement of a security interest through the foreclosure process is not debt collection for purposes of the Act.'" Id. (quoting Warren v. Countrywide Home Loans, Inc., 342 F. App'x 458, 460-61 (11th Cir. 2009) (per curiam) (unpublished)).[10] Some courts have distinguished between the "enforcement of security interests" and the "collection of a debt" as fundamentally different activities, see Beadle v. Haughey, No. Civ.04-272-SM, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005) (citing Rosado v.Taylor, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004)); see also Hasbun v. Recontrust Co., N.A., No. 11–60488–CIV, 2011 WL 3837158, at *2 (S.D. Fla. Aug. 24, 2011) (distinguishing between the "enforcement of security interests" and the "collection of a debt" as fundamentally different activities), but the Eleventh Circuit more recently has ruled that actions taken in the course of enforcing a security interest by foreclosing on a mortgage can, in certain circumstances, go beyond what is necessary to enforce the security interest and become an attempt to collect the underlying debt and thereby fall within the ambit of the FDCPA, see, e.g., Reese v. Ellis, Painter, Ratterree &

---

[10] Specifically, the Warren court found that only § 1692f(6) of the FDCPA, which specifically addresses non-judicial foreclosures, applies to the foreclosure of a security interest. 342 F. App'x at 460-61.

11

Adams, LLP, 678 F.3d 1211, 1217 (11th Cir. 2012) (per curiam); Bourff v. Rubin Lublin, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012) (per curiam).

Under these recent decisions, McCalla's actions may implicate the FDCPA if they were an attempt not just to enforce BANA's security interest, but also to collect a debt. See Rousseau v. Bank of N.Y., Civil Action No. 08-cv-00205-PAB-BNB, 2009 WL 3162153, at *8 (D. Colo. Sept. 29, 2009) (citations omitted) (recognizing that even when a security interest is involved, "where there is some attempt to collect money in addition to the enforcement of a security interest, an FDCPA claim will lie, at least for the conduct related to the money collection"); see also Reese, 678 F.3d at 1217-28 (finding a communication can have dual purposes even where a law firm intended the letter and documents sent to debtor to give notice of foreclosure where they also demanded payment on the underlying debt); Bourff, 674 F.3d at 1241; Beadle, 2005 WL 300060, at *3.

Considering the allegations of the amended complaint in the light most favorable to plaintiffs, and in view of the recent Eleventh Circuit decisions, the Court finds that plaintiffs have adequately alleged conduct that plausibly qualifies as "debt collection activity" under the FDCPA. The amended complaint specifically alleges violations of the FDCPA premised on the August 2, 2011, notice of foreclosure sale, see [Doc. 3 at 8 ¶ 28], that McCalla sent to plaintiffs, and the notice includes in large,

bold letters at the bottom of each page: "THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." [Doc. 5-4]. Moreover, the August 2, 2011, notice references a letter dated April 28, 2011 (the "Initial Communication Letter") in which McCalla notified the plaintiffs that the loan had been referred to the law firm for handling, and the notice states, "The entire amount of the outstanding balance of principal and interest owed on the loan and any other authorized charges is now due and payable." [Id. at 1]. The amended complaint also alleges that the April 28, 2011, initial communication was a "dunning letter" that "declared [p]laintiffs owed the entire loan amount" and also stated "[t]he debt is owed to [BANA]," see [Doc. 3 at 4 ¶ 14]. The allegations of the amended complaint here are sufficiently similar to the allegations in Reese to support finding that plaintiffs have adequately alleged that McCalla engaged in debt collection activity that falls within the ambit of the FDCPA, see Knowles v. Am. Home Morg. Servicing, Inc., Civil Action No. 5:11-cv-01670-AKK, 2012 WL 2357752, at *4 (N.D. Ala. June 18, 2012). However, the Court must still consider whether plaintiffs have alleged a plausible claim under the relevant provisions of the FDCPA.

C.  **Acts Prohibited by the FDCPA**

Even if the August 2, 2011, notice constitutes "debt collection activity" under the FDCPA, McCalla maintains that its motion to dismiss is still due to be granted because plaintiffs have failed to adequately allege that McCalla engaged in acts

13

prohibited by the FDCPA. [Doc. 5-1 at 12-20]. Plaintiffs allege that McCalla "violated the [FDCPA] by sending [the] August 2, 2011 Notice of Foreclosure Sale letter, as said letter was a false and misleading communication sent in an attempt to collect a debt." [Doc. 3 at 8 ¶ 11]. Specifically, plaintiffs contend that McCalla falsely identified BANA as the secured creditor of the note with full authority to negotiate, modify or amend the note and consequently violated 15 U.S.C. §§ 1692e, 1692f and 1692g(a)(2). See [id. at 8 ¶ 28].

1. *Section 1692g(a)(2)*

Under § 1692g, a debt collector must communicate certain information to the debtor, either in the initial communication or within five days after the initial communication. See Shuler v. Ingram & Assocs., 441 F. App'x 712, 717 (11th Cir. 2011) (per curiam) (unpublished) (citing 15 U.S.C. 1692g(a)). This information includes: "(1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; and (3) statements regarding the consumer's right to dispute the debt, obtain verification of the debt, or obtain the name and address of the original creditor." Id. Plaintiffs contend that the letter sent to them on August 2, 2011, fails to satisfy this provision of the FDCPA because the notice falsely identified BANA, not Fannie Mae, as the "creditor to whom the debt is owed." See [Doc. 3 at 7-8 ¶¶ 26-28]. However, "it does not matter if the Notice is ineffective unless the Act

required it to be sent," McKnight v. Benitez, 176 F. Supp. 2d 1301, 1303 (M.D. Fla. 2001), and here, the factual allegations set forth by plaintiffs make it clear that this letter was neither the initial communication between McCalla and plaintiffs, nor was it sent within five days of that initial communication, see [Doc. 3 at 4 ¶ 14 (alleging that plaintiffs received a letter from McCalla as early as April 28, 2011, more than three months before the communication at issue was sent)].[11] Therefore, the August 2, 2011, communication falls outside of the scope of § 1692g(a)(2), see Peterson v. Portfolio Recovery Assocs., LLC, 430 F. App'x 112, 114-15 (3d Cir. 2011) (unpublished) (finding that obligations under § 1692g(a) relate only to debt collector's initial communication and thus subsequent communications could not support a time-barred cause of action for violation of 1692g(a)), and it is accordingly **RECOMMENDED** that McCalla's motion to dismiss be **GRANTED** with respect to any claims under § 1692g(a)(2).

**2.** *Sections 1692e and 1692f*

Under § 1692e of the FDCPA, a debt collector is prohibited from using "any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Similarly, § 1692f prohibits a debt

---

[11] Any deficiency with regard to the April 28, 2011, letter cannot support a claim under § 1692g(a)(2) because it is outside the one-year statute of limitations since this action was filed on August 1, 2012. See 15 U.S.C. § 1692k(d).

collector from using "any unfair or unconscionable means to collect any debt." 15 U.S.C. § 1692f. Plaintiffs contend that identifying BANA as "the secured creditor of the Note"[12] with "the full authority to negotiate, modify or amend said Note" in the August 2, 2011, letter violates both of these provisions because it is a false representation unconscionably used to collect a debt from plaintiffs when McCalla knew that Fannie Mae was in fact the holder of the promissory note for plaintiffs' loan.[13] See generally [Docs. 3, 8].

---

[12] McCalla takes issue with plaintiffs' citation to Bourff, asserting that the case is distinguishable since the bank in Bourff was assigned the security deed after default, making it a debt collector under the FDCPA, whereas BANA was the original lender on plaintiffs' loan before any default occurred, making it a creditor under the FDCPA. See [Doc. 9 at 6-8]. As a result, McCalla contends, BANA is correctly identified as a creditor here, whereas the bank in Bourff was instead a debt collector under the statute. [Id.]. While the Court agrees with McCalla's analysis and finds that BANA is in fact a creditor under the FDCPA, see [id.], plaintiffs' amended complaint takes issue with the fact that McCalla's letter identified BANA not just as a creditor, but as a secured creditor, see [Doc. 5-4]. Accordingly, the relevant question in evaluating whether the letter was misleading is not whether BANA is a creditor or a debt collector under the FDCPA, but whether BANA was falsely described as a secured creditor.

[13] McCalla asserts that the letter did not identify BANA as the secured creditor, but instead only as a creditor with the authority to negotiate regarding plaintiffs' loan. See [Doc. 5-1 at 14, 19; Doc. 9 at 8]. However, upon reading the language of the August 2, 2011, letter, the Court agrees with plaintiffs that this interpretation, which requires the reader to consider adjacent sentences in the notice as completely unconnected statements, is not persuasive, see [Doc. 8 at 6], particularly in light of the "least sophisticated consumer standard" which must be applied when considering the impact of the communication, see Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985) (citation omitted).

However, the August 2, 2011, letter did not identify BANA as "the secured creditor of the Note," or imply that BANA had authority to modify or amend the note. See generally [Doc. 5-4].[14] Instead, the letter identified BANA as the "secured creditor," with "full authority to negotiate, amend, and modify all terms of the *mortgage*," see [id. at 2 (emphasis added)], and as the Eleventh Circuit explained in Reese, a mortgage is not a note, it "is a security interest with real property as the collateral," 678 F.3d at 1216 (citations omitted). Thus, the amended complaint does not state a plausible claim that McCalla made a false, deceptive or misleading representation that BANA was "the secured creditor of the Note," or that BANA had authority to modify or amend the note, and the only remaining issue is whether the representation that BANA was the secured creditor with authority to modify the mortgage amounts to a false, deceptive, or misleading representation, and the Court finds that it does not.

The FDCPA does not define the term "secured creditor," but it does define the term "creditor," and as McCalla correctly contends, BANA clearly qualifies as a creditor under that definition since it was the original lender on plaintiffs' loan before any default occurred. See [Doc. 5-1 at 12-13]; see also 15 U.S.C. § 1692a(4).

---

[14] The amended complaint quotes the relevant portion of the August 2, 2011, letter and purports to attach it as Exhibit A, [Doc. 3 at 5 ¶ 17], but it is not attached. However, McCalla has attached the letter as an exhibit to its motion. [Doc. 5-4].

Moreover, the amended complaint alleges that in connection with securing the loan, plaintiffs "executed a Note and a Security Deed, both listing [BANA] as the secured creditor." [Doc. 3 at 3 ¶ 8]; see also [Doc. 5-2]. Thus, plaintiffs allege that BANA was the secured creditor of the note and the security deed, and although plaintiffs allege that BANA subsequently sold and assigned the note to Fannie Mae, [Doc. 3 at 3 ¶ 11]; see also [Doc. 5-3], BANA was still the holder of the security deed according to the allegations of the amended complaint, see generally [Doc. 3]. Accordingly, BANA was the secured creditor of the mortgage, as stated in the August 2, 2011, letter, [Doc. 5-4], and therefore retained the authority to modify the terms of plaintiffs' mortgage under the allegations of the amended complaint, since the term "mortgage" refers not to plaintiffs' promissory note, but to the security interest associated with plaintiffs' loan, see Reese, 678 F.3d at 1216 (citations omitted) (distinguishing a promissory note from a security interest and stating that a mortgage is "a type of security interest with real property as the collateral"). Therefore, the undersigned finds that the statement in the August 2, 2011, letter, that BANA was a secured creditor with authority to negotiate, amend, and modify all terms of the mortgage, cannot serve as the basis for plaintiffs' claim that McCalla used a false, deceptive, or misleading representation or unfair or unconscionable means to collect a debt under the FDCPA, see 15 U.S.C. §§ 1692e, 1692f; [Doc. 5-4],

and it is **RECOMMENDED** that McCalla's motion to dismiss, [Doc. 5], be **GRANTED**, and that plaintiffs' complaint be **DISMISSED**.

## IV. CONCLUSION

For the forgoing reasons, McCalla's motion to stay discovery and pretrial deadlines, [Doc. 6], is **GRANTED**, and it is **RECOMMENDED** that McCalla's motion to dismiss, [Doc. 5], be **GRANTED**.

The Clerk is **DIRECTED** to terminate this reference.

**IT IS SO ORDERED** and **RECOMMENDED** this 15th day of January, 2013.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE